**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____

BERNADETTE FELICIANO              :

                                 C.A. No.

    VS.                       :

                                  **JURY TRIAL DEMANDED**

LUFRANKTON 2 LLC                  :
d/b/a DUNKIN' DONUTS

_____

**CIVIL ACTION COMPLAINT**

COMES NOW, Plaintiff, by counsel, complains of defendant as follows:

JURISDICTION

1. This Court has federal jurisdiction over this matter pursuant to The Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111 et seq. (hereinafter "ADA").

2. This Complaint was filed within 90 days after issuance of a Notice of Right to Sue by the EEOC on June 23, 2026.

PARTIES

3. Plaintiff, Bernadette Feliciano, is an adult individual who resides at 148 Starlight Drive, Effort, PA 18330.

4. Defendant, Lufrankton 2 LLC d/b/a Dunkin' Donuts, is a foreign limited liability company registered in the Commonwealth of Pennsylvania with a principal place of business located at

2517 Highway 35, Ste. H101, Manasquan, NJ 08736-1987, which has at least one location in this judicial district located at 3198 PA Rte. 115, Effort, PA 18330 in Monroe County, Pennsylvania (hereinafter "the Effort store").

BACKGROUND FACTS

5.   At all times material hereto, Defendant employed 50 or more persons within a 75-mile radius of the vicinity of the Effort store-- where Plaintiff worked.

6. In about August 2018, Plaintiff commenced employment with Defendant's predecessor, Effort PA Donuts LLC, as a floor employee at Defendant's Effort store.

7.   During the term of her employment, Plaintiff was promoted to Assistant Manager of the Effort Store in about 2020 and thereafter was promoted to Manager of the Effort store in 2021.

8.   During her employment with Defendant, Plaintiff's supervisors included but were not limited to Darnell Hendricks (General Manager), Dillon Comstcok (Director) and Emilio Conee (high level management employee).

9.   At all times material hereto, Plaintiff suffered from Stage III colon cancer, which is a disability pursuant to the ADA because it affects at least one major-life activity including but not limited to digestion and working.

10.    In about June 2024, Plaintiff commenced 12 weeks of approved FMLA leave to undergo surgery on her colon for colon cancer and needed recovery time following her surgery.

11.    As a result of her colon surgery, about 90% of her colon was removed and she was fitted with a colostomy bag.

12.    While Plaintiff was on FMLA leave, Defendant assigned Kirby, the assistant manager, from the Broadheadsville, PA store, to cover for her.

13.    After Plaintiff returned to work with Defendant on October 22, 2024, she notified Conee that she would have to undergo chemotherapy treatments (hereinafter "chemo treatments").

14.    After Plaintiff returned to work with Defendant on October 22, 2024, Defendant terminated Kirby.

15.    Conee worked out a schedule for Plaintiff wherein she would be accommodated to take a half-day off from work once per week for a half-day the next morning following each chemo treatment.

16.    Plaintiff missed no work for the weekly treatments because she was able to schedule them in the evenings after her shift ended.

17.    Plaintiff was unable to schedule days off for herself the days after her chemo treatments, because Defendant refused to provide coverage for her.

18.   Plaintiff's out-patient chemo treatments commenced about the middle of October 2024.

19.   Thus, Defendant did promise to accommodate Plaintiff to miss a half-day each week for her Stage III colon cancer.

20.   Darnell Hendricks and Dillon Comstock refused to cover for Plaintiff and instead ordered Plaintiff to find coverage for herself on the half-days after her chemo treatments.

21.   On January 16, 2025 Plaintiff received several awards from the Defendant's owners including but not limited to: (1) an award for raising most money for Joy Foundation fund raiser; (2) an award for fastest service in the drive-through; (3) an award for the most accurate preparation of food and beverage orders resulting in the least waste.

22.   Prior to the end of her shift at 12:30 P.M. on January 19, 2025, Plaintiff arranged for full staffing coverage of the two next shifts at Effort store between 2:00 P.M. on January 19, 2025 through 12:30 P.M. on January 20, 2025.

23.   At about 5:30 A.M. on January 19, 2025, Plaintiff put in for a priority service order to fix a malfunctioning baker's oven that broke down that morning after Plaintiff successfully used it to bake a full order of croissants and a half order of bagels.

24.   During the workday on January 19, 2025, Darnell came to the Effort store and took the store's last case of bagel

dough and asked Plaintiff when her reversal surgery to remove her colostomy bag would be done.

25.  Plaintiff responded that that procedure would take place in about May or June 2025 and that she would miss about six (6) weeks of work.

26.  Darnell responded: "Oh, that's not going to work for us."

27.  on January 19, 2025, Plaintiff left the Effort store to go home, and about an hour later-- at about 1:30 P.M.-- she self-administered her chemo treatment at her home.

28.  Because of the agreed accommodation granted by Defendant to Plaintiff, Plaintiff would return to the Effort store no earlier than January 20, 2025 at 8:00 A.M.

29.  On January 19, 2025 at 1:50 P.M., Dillon called Plaintiff and demanded that she immediately go to the Effort store because all of the floor workers scheduled to work that 2:00 P.M. shift had called out due to an incoming snowstorm-- so there would be no one to keep the store open during that shift.

30.  Plaintiff told Dillon that she could not go in for the 2:00 Shift at the Effort store because she had just started her chemo treatment-- which makes her very weak-- and she would not be able to go in until halfway into her shift on January 20, 2025.

31.  Dillon showed no sympathy for Plaintiff and raised his voice in anger and demanded that Plaintiff find coverage for the 2:00 P.M. shift at the Effort store.

32.  Plaintiff tried to find coverage including calling her floor employee, Paul Penny, who was still at the store and scheduled to leave at 2:00 P.M. and asked him to stay at the store.

33.  Mr. Penny refused, saying his time was up and he was leaving and locking the doors because he did not want to get stuck there due to the incoming snowstorm.

34.  Plaintiff called back Dillon and told him that despite that she had been nauseous and vomiting, she tried her best to find someone to cover for the employees who called out for the 2:00 P.M. shift, but she was unable to do so, and Dillon responded that she must ensure there was coverage for the store for the following morning.

35. Plaintiff went into the Effort store at 6:30 A.M. on the following morning—February 20, 2025-- and she was the only person there due to the heavy snowstorm.

36.  Between 7:00 A.M. and 10:00 A.M. female floor worker and Paul Penny showed up to help out.

37.  Dillon arrived at 9:00 A.M. and he told Plaintiff he was upset that there was so few floor workers present and there were so few bakery products in stock.

38.   Plaintiff responded that no one came to fix the malfunctioning baker's oven despite the fact that she put in for a priority service call the morning before.

39.   After her shift on January 22, 2025, Plaintiff was on her way home when received a call to go back to the Defendant's Effort store for a meeting.

40.   When Plaintiff arrived back at the Effort store, she met with Dillon and Conee.

41.   On January 21, 2025, Conee and Dillon discharged Plaintiff purportedly for her refusal to go to the store to ensure it remained open on the evening of January 19, 2026 and because she purportedly failed to not put in a service call for the malfunctioning baker's oven.

42.   The proffered reason for Plaintiff's termination was pretext designed to mask the true reason for Plaintiff's termination.

43.   The true reason why Plaintiff was terminated by Defendant was because she requested reasonable accommodations for her disability—Stage III colon cancer, including not working immediately after she self-administered a chemo treatment (an accommodation that had already been approved) and/or informing her supervisor that she would need to take six (6) weeks leave due to further treatment for her Stage III colon cancer.

44.   Defendant granted the accommodation to stay out for

half of work on the day after her weekly chemo treatments but thereafter refused to uphold its accommodation on the eve of a snowstorm resulting in closure of the Effort store on January due to staff calling out.

45.   Plaintiff did nothing to cause the closure of the store and was unable to tend the store herself due to her chemo treatment that evening.

46.   The circumstances that led to the closure of the store were unavoidable under the circumstances and would not warrant a last-minute decision to no longer honor a promised reasonable accommodation.

47.   Plaintiff did order the repair of the baker's oven prior to her termination.

48.   Defendant and its agents acted at all times material hereto with their authority to hire, fire and discipline.

49.   Defendant acted with malice to cause intentional harm to Plaintiff in retaliation for her refusal to prevent the Effort store from closing against the recommendations of her physician.

50.   Defendant and its agents undertook a course of conduct toward Plaintiff and intentionally terminated her in violation of the ADA.

51.   Defendant's agents acted against Plaintiff in an intentional, bigoted, willful and malicious manner.

52.   Plaintiff was subjected to humiliation, embarrassment and mental anguish as a consequence of her termination from employment.

53.   Plaintiff seeks lost pay, benefits, compensatory damages for pain and suffering, punitive damages, attorney fees and costs.

## COUNT 1— ADA RETALIATION

54.   Plaintiff incorporates paragraphs 1-53 herein as if set forth at length.

55.   By and through its conduct, Defendant violated the ADA by intentionally terminating Plaintiff's employment because she sought reasonable accommodations for her disability.

WHEREFORE, Plaintiff demands judgment on Count 1 against defendant and damages in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

## COUNT 2— ADA DISCRIMINATION

56.   Plaintiff incorporates paragraphs 1-55 herein as if set forth at length.

57.  By and through its conduct, Defendant violated the ADA by intentionally terminating Plaintiff's employment because she suffered from a disability that required reasonable accommodations.

WHEREFORE, Plaintiff demands judgment on Count 2 against defendant and damages in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 3— FMLA INTERFERENCE

58.  Plaintiff incorporates paragraphs 1-57 herein as if set forth at length.

59.  Stage III colon cancer is a serious health condition pursuant to the Family and Medical Leave Act of 1993 (hereinafter, FMLA").

60.  Defendant and its agents violated the FMLA by unlawfully interfering with Plaintiff's ability to take six (6) weeks of continuous FMLA protected leave for her serious health condition and to thereafter return to employment with Defendant.

61.  Specifically, on January 19, 2025, Plaintiff provided advanced notice to Defendant's management employee Darnell of

her anticipated need for six (6) weeks of continuous leave starting some time in about May or June 2025 to undergo reversal surgery and recovery related to her Stage III colon cancer.

62.  At the time of her anticipated continuous leave for her serious health condition, Plaintiff was eligible for FMLA protection in that she suffered from a serious health condition that necessitated such leave, her treating doctors were health care providers as defined by the FMLA and she would have worked at least 1,250 hours during the twelve (12) months preceding the start of her anticipated FMLA leave.

63.  In fact, as of some point in at least the end of June 2025, Plaintiff would have been eligible to commence continuous FMLA leave for herself for up to 12 weeks in that she had no FMLA leave in the preceding twelve (12) months, because Plaintiff would have been able to delay her aforementioned reversal surgery until she was eligible to commence FMLA leave in about the end of June 2025.

64.  Upon hearing about Plaintiff's need for six (6) weeks of continuous FMLA leave, Defendant's agent Darnell responded: "Oh, that's not going to work for us."

65.  Darnell thus exhibited his intent to prevent Plaintiff from taking the necessary leave for her serious health condition and his intent to prevent her return to the workplace after the leave.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 3 against Defendant for lost pay, lost benefits, other financial losses, liquidated damages equal to actual damages, reasonable attorneys' fees and costs, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

COUNT 4— FMLA RETALIATION

66. Plaintiff incorporates paragraphs 1-65 herein as if set forth at length.

67. Defendant and its agents violated the FMLA by unlawfully retaliating against Plaintiff for notifying Defendant of her need to take six (6) weeks of leave for her serious health condition.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 4 against Defendant for lost pay, lost benefits, other financial losses, liquidated damages equal to actual damages, reasonable attorneys' fees and costs,

reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

Date:  July 30, 2026

/s/ Samuel A. Dion

_____

Samuel A. Dion, Esq.
Dion & Goldberger
2001 Market Street
Suite 2500
Philadelphia, PA 19103
215-280-0138 (Cell)
samueldion@aol.com
Attorneys for Plaintiff